UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| N.A.L.R., | ) |
|         Petitioner, | ) |
| v. | ) No. 4:25-cv-00192-SEB-KMB |
| PAMELA BONDI U.S. Attorney General, *et al.*, | ) |
|         Respondents. | ) |

**ORDER**

NALR is an alien who has been subject to a final order of removal since 2016. The government did not remove her or detain her, instead it released her subject to an order of supervision. Despite her compliance with that order, NALR was arrested at her home nine months ago by U.S. Immigration and Customs Enforcement officers and has been detained in ICE custody ever since.

NALR's petition for a writ of habeas corpus seeks immediate release from detention based on the government's failure to abide by its own processes for revoking her order of supervision. The government does not contend otherwise. Accordingly, her petition is granted.

**I. Background**

NALR entered the United States as a child in approximately 1998. Dkt. 1 ¶ 21. The government initiated removal proceedings after she pled guilty to a misdemeanor in 2013. She was ordered removed, which order became final in 2016. *Id.* ¶¶ 24–27.

However, NALR was not removed. Instead, she was allowed to remain in the United States free from detention subject to an order of supervision. It is not alleged that NALR violated any of

the conditions of her supervision throughout the roughly nine years they were in effect. *Id.* ¶¶ 28–29.

NALR was arrested at her home in late January 2025 (Dkts. 13-2, 13-4) without any advance notice or written documentation stating the reasons for her arrest. Dkt. 1 ¶¶ 31–32. She is currently confined at the Clark County Jail in our district.

## II. Legal Standard

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The laws governing NALR's petition are detailed in four settings:

First, the Attorney General must maintain supervision of an alien who has been ordered removed for a period of 90 days but who remains in the U.S. 8 U.S.C. § 1231(a)(1). "If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Aliens who have been ordered removed for certain reasons may be released, subject to supervision, at the Attorney General's discretion. 8 U.S.C. § 1231(a)(6).

Second, the regulations referenced in § 1231(a) prescribe procedures for revoking an order of supervision and returning a removable alien to custody. If the alien "violates the conditions of release," she "will be notified of the reasons for revocation" of release, returned to custody, and "afforded an initial informal interview promptly after" return to custody so she may have "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).

Alternatively, designated officials are granted discretionary authority to revoke certain orders of supervision. 8 C.F.R. § 241.4(l)(2). The revoking official must determine that:

    i.    The purposes of release have been served;

    ii.    The alien violate[d] any condition of release;

    iii.    It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

    iv.    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.* Section 241.4(l)(3) requires additional reviews to occur following any redetention.

Third, the Administrative Procedure Act requires federal courts to "hold unlawful and set aside agency action" that is determined to be:

    A.  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    B.  contrary to constitutional right, power, privilege, or immunity; [or]

    C.  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2). "[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests." *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954) ("We think the petition for habeas corpus charges the Attorney General with precisely what the regulations forbid him to do: dictating the Board's decision. [W]e object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations."); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *6–7 (W.D. Ky. Sept. 4, 2025) ("Based upon the record provided, no reasons were provided by ICE and no informal interview promptly occurred. . . . ICE's failure to follow their own regulations violate the *Accardi* doctrine and K.E.O.'s procedural due process rights.").

Fourth, and most succienctly, "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

3

### III. Analysis

There is no dispute between the parties that NALR is a removable alien whose detention is authorized by 8 U.S.C. § 1231(a). Because the 90-day removal period expired long ago, NALR currently is eligible for release subject to an order of supervision by Immigration officials. Indeed, NALR *was* released subject to an order of supervision and, according to the record before the Court, fully complied with the conditions for more than eight years before taken into custody.

NALR contends that her current confinement is unlawful because the government has not abided by its own processes for revoking her release. Lacking any evidence that she violated any of her conditions of release, the government is not authorized by law to revoke her release under 8 C.F.R. § 241.4(l)(1). No evidence that either the Executive Associate Commissioner or a District Director revoked NALR's release, as required by § 241.4(l)(2), has been proffered. Indeed, there is no evidence to establish that they ever undertook any review of the relevant considerations or made the required findings. *See* dkt. 1 ¶¶ 55–61; dkt. 16 at 3–6.

Respondents have entirely failed to address in their response brief what is the dispositive issue before us, arguing merely that NALR's detention is authorized by 8 U.S.C. § 1231(a), a point that is not in dispute. Respondents concede that a removable alien who is returned to custody is entitled to certain procedural protections as provided at 8 C.F.R. § 241.4, further, they implicitly concede that NALR's release likely occurred pursuant to 8 C.F.R. § 241.4(l)(1) or (2). However, no evidence or argument has been advanced by Respondents to show that a duly authorized Immigration official ever revoked NALR's release pursuant to the required, lawful procedures. In fact, Respondents do not actually argue against NALR's legal position in this petition by claiming

that the revocation of NALR's release and her continued detention remain lawful, even though her release was not revoked by the correct official or according to the correct process.[1]

NALR has demonstrated that following her initial arrest she was released subject to an order of supervision and that her release was never revoked by any official with authority or according to the prescribed legal process. The government has proffered no evidence or argument to the contrary. Accordingly, any argument that NALR is ineligible to receive habeas corpus relief on this basis has been waived. *See Bonte*, 624 F.3d at 466. Pursuant to the APA and the *Accardi* doctrine, revocation of NALR's release and her current detention are contrary to law and must be rescinded and set aside.[2]

---

[1] The recent surge in immigration detentions confronting the Court and attorneys representing respondents in this District impose special challenges as well as obligations arising from this sometimes new and usually complex area of the law. Nevertheless, if and when the government chooses to detain aliens, such action must comply fully with all the legal requirements. The Court cannot and will not perform the tasks properly required of the attorneys in terms of supplying arguments and legal authorities.

[2] In reaching this result, the Court joins District Courts throughout the country who similarly have ordered the release of aliens being detained without compliance with 8 C.F.R. § 241.4(l). *See also, e.g.*, *Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *5 (S.D. Cal. Oct. 10, 2025) ("ICE's failure to comply with both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 violated Petitioner's due process rights. . . . Respondents are ORDERED to immediately release Petitioner from custody, subject to his preexisting Order of Supervision."); *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *7 (S.D. Tex. Sept. 26, 2025) ("Multiple courts have held that the government's failure to follow its own immigration regulations may warrant the release of a detained noncitizen."); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The process afforded here fails to comply with ICE's own regulations or comport with traditional notions of due process. It is a rather 'unremarkable proposition that an agency must abide by its own regulations.'" (quoting *Chevron Oil v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979); citing *Accardi*, 347 U.S. at 268); *Diaz v. Wofford*, No. 1:25-CV-01079-JLT-EPG, 2025 WL 2581575, at *9 (E.D. Cal. Sept. 5, 2025) ("Here, on the present record it does not appear that petitioner was afforded appropriate notice and an opportunity to be heard in compliance with the regulation or by any other means."); *K.E.O.*, 2025 WL 2553394 at *7 (Immigration statutes are complex. The broad discretion vested in the government to enforce immigration laws, including on occasion the revocation of a Petitioner's Order of Supervision, must nonetheless be exercised in full compliance with applicable statutes and regulations.); *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful. For that reason, the Court finds that Delkash is likely to succeed on his claim that the government did not properly revoke his release pursuant to 8 C.F.R. §§ 241.4 and 241.13."); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *12 (D. Or. Aug. 21, 2025) ("In sum, ICE failed to follow its own regulations in detaining Petitioner by (1) failing to provide a timely Notice of Revocation of Petitioner's Order of Supervision; (2) failing to provide a Notice of

## IV. Conclusion

NALR's petition for a writ of habeas corpus is **granted** and NALR is ordered released forthwith from custody subject to her most recent order (and conditions) of supervision. The respondents are allowed until **October 27, 2025**, to certify to the Court that NALR has been so released from detention. **Final Judgment** shall enter.

NALR's unopposed motion to proceed under a pseudonym, dkt. [3], is **granted**. [3]

**IT IS SO ORDERED.**

Date: 10/23/2025

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

Revocation signed by an official authorized to revoke Petitioner's release; and (3) failing to provide Petitioner with a 'prompt' informal interview so that she could contest the reasons for her revocation. In doing so, ICE violated Petitioner's constitutional due process rights. Petitioner's habeas petition will be GRANTED and Petitioner will be ordered RELEASED.").

[3] Federal courts maintain a "strong presumption that adult litigants must use their own names." *Doe v. K.J.*, No. 25-1046, 2025 WL 2755815, at *1 (7th Cir. Sept. 29, 2025). However, the Seventh Circuit has permitted litigants to proceed pseudonymously to limit exposure to retaliatory violence and "to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997); *see also P.A.-V. v. Bondi*, 148 F.4th 511, 515 (7th Cir. 2025) (granting motion to proceed under pseudonym "out of an abundance of caution" because movant's "fear of retaliatory acts of violence . . . renders anonymous litigation prudent" and "the potential harm from disclosure outweighs any potential harm of concealing P.A.-V.'s full name"); *E.F.L. v. Prim*, 986 F.3d 959, 961 (7th Cir. 2021) ("Because of E.F.L.'s allegations of domestic abuse and her fear of retaliation, this court granted her motion to use a pseudonym while pursuing this appeal."). NALR's unopposed representations that she is a victim of both sex trafficking and domestic violence whose identification would expose her and her minor children to a risk of further abuse justify application of the exception in this case.

Distribution:

Jess Hunter-Bowman
NATIONAL IMMIGRANT JUSTICE CENTER
jbowman@immigrantjustice.org

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov